UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

THERESA MARIE MALDONADO,

                        Plaintiff              DECISION AND ORDER

-vs-

                                               16-CV-6678 CJS

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.
_____

APPEARANCES

For the Plaintiff:                    Brandi C. Smith, Esq.
                                          Kenneth R. Hiller, Esq.
                                          Law Offices of Kenneth Hiller
                                          60000 North Bailey Avenue, Suite 1A
                                          Amherst, New York 14226

For the Defendant:                Lauren E. Myers, Esq.
                                          Social Security Administration
                                          Office of General Counsel
                                          26 Federal Plaza, Room 3904
                                          New York, New York 10278

                                          Kathryn L. Smith, A.U.S.A.
                                          Office of the United States Attorney
                                          for the Western District of New York
                                          100 State Street
                                          Rochester, New York 14614

INTRODUCTION

     This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security ("Commissioner" or "Defendant"), which denied the application of Theresa Maldonado ("Plaintiff") for Social Security

1

Disability Insurance Benefits ("SSDI") and Supplemental Security Income Benefits ("SSI"). Now before the Court is Plaintiff's motion (Docket No. [#12]) for judgment on the pleadings and Defendant's cross-motion [#17] for judgment on the pleadings. Plaintiff's application is granted and Defendant's application is denied.

## FACTUAL BACKGROUND

The reader is presumed to be familiar with the parties' submissions, which contain detailed recitations of the pertinent facts. The Court has reviewed the administrative record [#7] and will reference it only as necessary to explain this Decision and Order.

Plaintiff, born in 1976, claims to be disabled due primarily to arthritis of the knees, lower back pain,[1] obesity, and mental impairments, with an alleged onset date of June 30, 2011. Plaintiff takes prescription medications for her pain, but indicates that leg pain still interferes with her sleep.[2] Plaintiff experienced depression following the death of her mother. Plaintiff has asthma and hypertension that are controlled with medication.

A doctor's note dated August 14, 2013, reports that Plaintiff was complaining of "feeling really sad and depressed" and asking for "a referral to a psychologist." (367). Plaintiff was subsequently evaluated at Genesee Mental Health Center on or about August 22, 2013.[3] (340-341). A report of that evaluation indicates that Plaintiff was

---

[1]Plaintiff began complaining of lower back pain following a motor vehicle accident. In March 2013, an MRI exam revealed "Mild degenerative disc disease t L5-S1 with mild to moderate bilateral neural foraminal narrowing." (338).

[2]The record indeed indicates that Plaintiff has severe arthritis in her knees, secondary to her obesity. Unfortunately, Plaintiff is unwilling to have pain injections because she cannot tolerate needles. On November 20, 2014, following a surgical consult, the surgeon indicated that Plaintiff needed knee surgery but would be a high-risk surgical candidate due to her weight. The surgeon recommended conservative treatment initially, primarily consisting of weight reduction and pain medications. (355).

[3]The letter reporting such fact appears to be incorrectly dated July 12, 2013. (373).

experiencing "difficulty sleeping, low mood, feeling 'down,' irritability, low motivation, low energy, and a temper at times," with a worsening of symptoms since her mother's death. (340). The report also indicated that Plaintiff was having interpersonal problems with her significant other, with whom she had lived for four years (340), which is surprising since Plaintiff had told the Commissioner, on April 22, 2013, that she lived alone. (218, 237). The diagnosis was "depressive disorder NOS," for which the treatment plan was individual therapy. (341). There is no indication that Plaintiff followed up with such therapy. A subsequent medical note dated November 20, 2014, observed that Plaintiff had an appropriate affect and normal cognition. (354).

Plaintiff acknowledges that her obesity is a factor in her knee and back pain, and she is working with a nutritionist and preparing to have bariatric surgery. Plaintiff indicated that she needs knee surgery, but has to first lose weight. Plaintiff goes to a gym about four times per week, where she walks on a treadmill for an hour total (thirty minutes at a time) and does some weight lifting. On May 16, 2014, Plaintiff reportedly told her doctor that she took daily 45-minute walks around her neighborhood. (411) ("She reports to walking 45 min daily around her street.").

Plaintiff is able to perform her own cooking, cleaning and laundry. Plaintiff estimated that she can sit for about an hour at a time before needing to get up, and can lift a gallon of milk. Plaintiff indicated that she can sit through an entire movie, though sometimes her back "tingles a little." (49-50). Plaintiff has no limitations on her ability to use her hands. Plaintiff has a driver's license and drove herself to the hearing. Plaintiff indicated that she usually just drives near her home, because prolonged driving causes her to experience back pain. Plaintiff has two sisters who live nearby, and she attempts

3

to visit them every day. Plaintiff indicated that she frequently provides transportation for her family members. Plaintiff receives food stamps, and claims to be supported primarily by her family. Plaintiff's hobbies are reading and watching movies.

Plaintiff's last work attempt lasted only one day, which she attributes to the fact that it required her to climb too many stairs. Prior to that, Plaintiff worked "off and on" for about four years as a cleaner and "prep cook" in a restaurant, which required her to use a dishwasher, clean the restaurant, prepare food for cooking, and prepare salads. Prior to that, Plaintiff worked on and off for several years as a flower arranger at a Wegmans supermarket. Plaintiff has also worked at a number short-term jobs through temporary agencies.

Plaintiff's education consists of completing the Eleventh Grade. Plaintiff took special education classes and was given services such as test modifications. Plaintiff was still in the Twelfth Grade at age 20, but did not complete the credits required to graduate. Plaintiff can perform addition and subtraction with some difficulty, and claims to need a calculator to do "basic math." Plaintiff indicated that she can pay her own bills and count change. (222). Plaintiff further indicated that she can follow written and spoken instructions, but has difficulty paying attention and understanding things. (225).

At the beginning of the administrative hearing in this matter, Plaintiff's attorney mentioned to the Administrative Law Judge ("ALJ") that the Commissioner had obtained a medical consultation, but not a psychological consultation. This may be due to the fact that Plaintiff did not list mental impairments as one of her disabling conditions when she applied for benefits. (212),[4] and further indicated that she had never seen a doctor or

---

[4] Plaintiff indicated, though, that she had attended special education classes. (213).

4

other health care professional for any mental conditions, "including emotional or learning problems." (215).[5]

In any event, Counsel told the ALJ that he believed Plaintiff's school records would adequately explain her mental condition. (25) ("I'm not sure why, but . . . they only did the physical consultative examination. I'm not sure why they didn't do the psychiatric. But we do have some school records – psychological evaluations and – that I think explains kind of her history pretty well."). In her memorandum of law in support of her motion for judgment on the pleadings in this action, Plaintiff summarizes this evidence as follows:

> School records from grades 7 through 8 indicated Plaintiff received Cs in Social Studies, Math, and Science. (Tr. 252). A psychological evaluation conducted in October 1992 revealed WISC-R testing scores of full scale IQ of 72, performance IQ of 73, and verbal IQ of 77. (Tr.261). She was 14 years and 1 month old at the time. (Tr. 261). It was noted she had historically demonstrative cognitive functioning 2 standard deviations below the mean on testing. (Tr. 263). It was recommended she be classified as learning disabled and continued placement in special education classes. (Tr. 263).
>
> School records from the 1993-1994 [school year] indicated Plaintiff failed U.S. History/Government, Writing, and Science. (Tr. 253). An Individualized Education Program ("IEP") for the 1994-1995 school year indicated Plaintiff received resource room services for 3 class periods every day as well as test modifications included extended test times, repeated questions, separate testing location, rephrases/simplified questions, and read directions. (Tr. 276, 286, 287). She was in the twelfth grade. (Tr. 286). She was still classified as learning disabled and was writing at a sixth-grade level. (Tr. 281). Despite these services, Plaintiff still failed all of her classes

---

[5]*But see*, Exhibit 7F, and Plaintiff's Prehearing Memorandum at p. 295 ("On July 12, 2013, the claimant was evaluated at Genesee Mental Health Center. Exh. 7F. Diagnosis was: depressive disorder NOS. She was referred for individual therapy.").

> that year except special education reading and writing. (Tr. 255).
>
> A psychological evaluation dated January 24, 1997 indicated Plaintiff was still in the twelfth grade and place in resource room services. (Tr. 289). She was 20 year and 5 months old. (Tr. 289). She was transferred to a different school due to being very depressed and suicidal and then later transferred to Young Mothers and received home/hospital instruction. (Tr. 289). It was recommended she continued to be classified as learning disabled and be placed in resource room. (Tr. 291).

Pl. Memo of Law [#12-1] at pp. 6-7.

The aforementioned report from the Committee on Special Education ("CSE") considering Plaintiff's individualized education plan ("IEP") for the 1994-1995 school year stated that while Plaintiff had previously been improperly labeled as mentally retarded, she nevertheless had "severe and pervasive learning disabilities." (286).

The aforementioned psychological evaluation performed in January 1997 noted that Plaintiff was reading at the 7th grade level and performing math at a third grade level without a calculator, though her "math computational skills" were at the 6th grade level. (290). The report noted that Plaintiff had "very weak" spelling and grammar skills. (290). The report also noted that although Plaintiff had previously experienced some problems with depression, she was not currently reporting any such problems. (291). The report observed that Plaintiff needed to meet only a few additional requirements to graduate, but that "her attendance is the biggest problem in her meeting her goal of obtaining a local diploma." (291).

At the administrative hearing before the ALJ, the only witnesses were the Plaintiff and a vocational expert. The ALJ asked Plaintiff about her special education classroom, and Plaintiff indicated that "[i]t was like almost a normal classroom except like I just – if I

needed help with stuff, I got help with it." (27). Plaintiff indicated that she enjoys reading books, but has difficulty performing even simple math. (27).

On April 22, 2015, the ALJ issued her Decision, finding that Plaintiff was not disabled at any time between the alleged date of onset (June 30, 2011) and the date of her decision. Applying the familiar five-step sequential analysis used to evaluate social security disability claims, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (71). At step two, the ALJ found that Plaintiff has the following severe impairments: bilateral joint disease of the knees, arthritis, lumbar disc disease, asthma, hypertension, obesity, varicose veins, and depressive disorder with insomnia. (71).

Notably, the ALJ found that Plaintiff's "intellectual disability" was non-severe, stating:

> With respect to the claimant's intellectual disability, she has a good work history and possesses functional skills that demonstrate that her intellectual impairment has only a minimal impact on her ability to work. The claimant's school records describe her intellectual impairment [as] mild, and her adaptive functioning skills led evaluators to conclude that she does not suffer from 'retardation.'

(71-72).

At step three of the sequential analysis, the ALJ found that Plaintiff's impairments did not meet-or-medically-equal a listed impairment. (72-73). Before reaching step four of the sequential analysis, the ALJ found that Plaintiff has the residual functional capacity ("RFC") to perform "simple, unskilled" sedentary work with various postural and environmental limitations. (73). At step four of the sequential analysis, the ALJ found that Plaintiff is not capable of performing her past relevant work. (76). However, at step

7

five, the ALJ found that Plaintiff can perform sedentary jobs identified by the VE, namely, "table worker," "addresser," and "order clerk." (77). Consequently, the ALJ found that Plaintiff is not disabled.

Plaintiff appealed to the Appeals Council. However, on August 24, 2016, the Appeals Council declined to review the ALJ's determination. (1-3).

On October 17, 2016, Plaintiff commenced this action. On June 9, 2017, Plaintiff filed the subject motion [#12] for judgment on the pleadings, and on November 9, 2017, Defendant filed the subject cross-motion [#17] for judgment on the pleadings. On November 30, 2017, Plaintiff filed a reply [#20]. On February 8, 2018, counsel for the parties appeared for oral argument, with Defendant's counsel appearing by telephone with the Court's permission.

STANDARDS OF LAW

42 U.S.C. § 405(g) states, in relevant part, that "[t]he findings of the Commissioner of Social security as to any fact, if supported by substantial evidence, shall be conclusive." The issue to be determined by this Court is whether the Commissioner's conclusions "are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

DISCUSSION

Plaintiff contends that this action must be remanded because the ALJ failed to properly develop the record concerning Plaintiff's mental impairments.

At step two of the sequential analysis, the ALJ must determine which of the

8

claimant's impairments are "severe." As the ALJ correctly noted, an impairment "is 'severe' within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities," and is "'not severe' when medical and other evidence establish only a slight abnormality . . . that would have no more than a minimal effect on an individual's ability to work." (70).

As previously indicated, the ALJ found that Plaintiff's "intellectual disability" was non-severe for reasons including that "she has a good work history" and that her school records describe her intellectual impairment as "mild." (71-72). The Court cannot say that either of those reasons is supported by substantial evidence in the record.

To begin with, the Court does not think the record shows a "good" work history. Plaintiff had no earnings for 1995, 1999 or 2010, and for most of the years that she worked between 1991 and 1998, she earned less than one thousand dollars. The most that Plaintiff earned during that period was $1,266.00, in 1993. (198). Between 2000 and 2011, the most that Plaintiff earned in a year was $14,648.50, in 2007. (198). In several of those years she earned less than $10,000.00, and in 2009 and 2011 she earned $279.19 and $37.60, respectively. (198). But regardless of whether one could call this work history "good," the Court does not believe that it says much about Plaintiff's intellectual functioning one way or another.

Moreover, as for the ALJ's statement that school officials described Plaintiff's intellectual impairments as "mild," the ALJ did not cite to the record, nor can the Court find such a notation. On the other hand, Plaintiff's school records clearly indicate that she has severe learning disabilities. See, (286) ("[T]he data clearly demonstrates that Theresa's functioning level is more like a student with severe and pervasive learning

9

disabilities than a [mentally retarded] student"); (289) ("Theresa entered the [Rochester City School District in September 1981] and was referred for an evaluation in 1982 because of delayed academic skill acquisition, attention problems, immature behaviors, and severe language deficits"); (290) ("Theresa has consistently scored in the mentally retarded range on cognitive tests of ability [even though her performance] seems to indicate that she is not truly mentally retarded"); (290) ("[S]he continues to have a learning disability"); and (291) ("Theresa has a long history of academic difficulties and has been classified Mentally Retarded for most of her schooling.").

For the foregoing reasons, the Court finds that the ALJ's determination at step two of the five-step sequential evaluation is not supported by substantial evidence. The matter must be remanded for further administrative proceedings, which should include a consideration of whether to develop the record by obtaining a consultative psychological examination.

## CONCLUSION

Plaintiff's application for judgment on the pleadings [#12] is granted, and defendant's cross-motion [#17] is denied. The matter is remanded to the Commissioner for further administrative proceedings.

So Ordered.

Dated: Rochester, New York
    March 8, 2018

ENTER:

/s/ Charles J. Siragusa
CHARLES J. SIRAGUSA
United States District Judge

10